[Crim. No. 2421.   First Dist., Div. Two.   Feb. 6, 1947.]

THE PEOPLE, Respondent, v. CLAUDE L. ENGELHART, Appellant.

Walter H. Duane for Appellant.

Robert W. Kenny, Attorney General, Carl W. Wynkoop, Deputy Attorney General, Edmund G. Brown, District Attorney, and Edmund J. Dunning, Assistant District Attorney, for Respondent.

NOURSE, P. J.—In a trial to a jury the defendant was convicted for a violation of the Insurance Code in presenting a false claim for insurance upon a quantity of liquor claimed to have been stolen.   He appeals from the judgment and from the order denying his motion for a new trial.

The defendant with two partners owned and operated a tavern in San Francisco known as the Camel Club.   On the evening of February 21, 1945, the two other partners left the club at about 11:30 p. m.; defendant was then attending the bar and was in full possession of the premises.   He left at about 12:30 and went' to the home of one of the partners. There they received a telephone call telling them that the club

had been burglarized. A few days later defendant and one of the partners made out an inventory and proof of loss which defendant signed and delivered to the agent of the insurance company.

On March 12, 1945, defendant went to the home of his sister-in-law where he stayed through the night. The following morning three police officers went to these premises. The defendant, who had spent the night on a bed in the living room, opened the door for the officers. He was very drunk and could not recall the conversations he had with the officers. One of them asked: ''Where is all this whiskey that is supposed to be here?'' The defendant let the officers in and went back to bed. He could not recall what answer he gave to the question about the liquor. The officers searched the premises and found twenty-five full cases and one opened case of liquor admittedly taken from the Camel Club. Three empty bottles taken from the opened case were found in the kitchen. Later fourteen more cases were found in the garage. After the liquor was found on March 13, the defendant was taken into custody. One of the partners was called to the premises; the defendant and other occupants were questioned, but all denied any knowledge of the presence of the liquor on the premises. While defendant was being transported to the police headquarters he said to his partner: ''I wonder who fingered the place to the cops.''

The only ground urged on the appeal is that the evidence is insufficient to support the verdict. It is conceded that there is no direct evidence that appellant was a party to the taking of the liquor, or to the storing of it in the premises of his sister-in-law, or of the knowledge that it was so stored when he filed the claim with the insurance company. It was not necessary for the State to prove more than that he filed a false claim of loss. To supply this proof the respondent relies upon the circumstantial evidence and the inference of knowledge arising from these circumstances. The question of law confronting us is whether, when guilty knowledge is an essential element of the crime charged, such knowledge may be inferred from the facts proved.

Appellant relies upon *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]; and *People* v. *Bledsoe,* 75 Cal.App.2d 862 [171 P.2d 950], both of which were prosecutions for the unlawful possession of narcotics. Neither case is helpful here. Both emphasized the necessity of proof of knowledge ''of the pres-

ence" of the drug as an essential element of the charge of unlawful possession. The Gory case went on the question of the necessity of an instruction covering that element of the crime. The Bledsoe case merely held that such proof was essential and that all the circumstances proved were insufficient to support a reasonable inference of knowledge. Both recognized as elementary that such knowledge need not be proved by direct evidence. There is nothing in the Bledsoe case which justifies the statement that it holds that the denials of the defendant must be taken as true as a matter of law. The plain language of the opinion is that no *reasonable* inference of knowledge could be drawn from the circumstances proved—and that is the basis of an inference as defined in section 1958 of the Code of Civil Procedure.

When an appeal is tendered on the ground of insufficiency of the evidence to support the judgment or verdict the function of the reviewing court is to determine whether there is substantial evidence direct or indirect to support it or whether, from the facts proved, there is a reasonable deduction to be drawn, or a presumption of law which supplies the lack of proved facts. If the question relates to inferences alone the principle is clearly stated in the concise sentence found in *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868] : "Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury. (See cases cited in 10 Cal.Jur. 738-739, sec. 60.)"

In the case at hand we must hold that a reasonable inference could have been drawn that appellant had "knowledge of the presence" of the liquor in the home of his sister-in-law from the fact that he was the last known person in possession of the premises from which it was taken, that he was a frequent visitor at the home of his sister-in-law, that the liquor was found in a locked room of her home, that the key to the room could not be found, that three empty bottles carrying distinct identification marks of the stolen liquor were found in the kitchen, and that appellant was found on the premises by the police officers at 10 a. m. so completely intoxicated that he was described as drunk, "a pretty sick boy," with a "hangover," and so intoxicated that "it is possible" that he did not understand what the officer was asking him. It was a reasonable deduction from these facts that appellant had become intoxicated from drinking of the liquor from the empty bottles

found in the kitchen. Since three bottles carried the stamp showing that they belonged to the Camel Club it was reasonable to infer that appellant knew he was using the liquor for which he had filed the claim of loss, and that he had known where to find it.

Under these circumstances the case is controlled by the rule of *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], reading: "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury."

Judgment and order affirmed.

Goodell, J., and Dooling, J., concurred.