[Crim. No. 2229.   Third Dist.   June 30, 1951.]

THE PEOPLE, Respondent, v. HARRY E. ROSS et al.,
Appellants.

Peter Mannino and C. K. Curtright for Appellants.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

DEIRUP, J. pro tem.—Defendants were jointly charged in the information with a violation of section 556 of the Insurance Code in that on or about January 15, 1948, they wilfully, unlawfully and feloniously, knowing the same to be false and fraudulent, subscribed a certain writing entitled ''Proof of Loss'' in the amount of $2,706.52, addressed to the Great American Indemnity Company and subscribed by all three defendants with the intent to present and use the same and to allow and use the same in support of a false and fraudulent claim for the payment of a loss under a contract of insurance. A jury convicted all three defendants. They applied for probation and moved for a new trial. The motion for a new trial was denied. Probation was granted for two years, the first six months of which was to be served in the county jail. This appeal is from the order denying a new trial.

The defendants were partners in the business of selling and repairing firearms and did business under the name of ''Ross Brothers Firearms.'' They carried insurance against loss by burglary with the Great American Indemnity Company. They reported that their store had been burglarized in the evening of December 6, 1947. An adjuster for the insurance carrier investigated the loss. He visited the store about six times and at different times contacted all three defendants together. To determine the loss he worked with various of the defendants by going over their records, invoices and all the papers they were able to give him. From information thus gathered the adjuster made a list of the guns and parts which were claimed by the defendants to have been stolen. All of the defendants aided in determining the amount of the loss and an inventory was completed which the adjuster took with him. Later the adjuster transcribed it into a typewritten document which purported to be a proof of loss and claim for $2,706.52. Defendant Harry E. Ross alone signed this original document on December 22, 1947.

On the original inventory the insurance company issued its draft in favor of all the defendants for the claimed sum of $2,706.52. It sent this draft and an official form of proof of loss to the adjuster with instructions to get the defendants to execute the proof of loss and deliver the draft. The official form was in blank excepting for the amount of the claim. Neither the original inventory nor the typewritten document was attached to it. Defendants signed and swore to the official form and received and cashed the draft. This was on January 15, 1948.

On November 1, 1949, police officers whose suspicions had been aroused searched the premises of defendant George and found in a shed a large box which contained several guns and gun parts and in his home a .45 caliber United States Army Model 1917 Smith and Wesson revolver, serial No. 923. They questioned defendant George, and he said that all three defendants were "present during the inventory that was turned over to the insurance company" and that, their financial condition being bad, they mutually agreed to pad the insurance report in order to get additional money to help carry on their business.

A comparison betweeen the guns and parts found with those listed in the inventory showed that numerous guns and parts that had been listed had been found, particularly at the home of the defendant George. On the claim, some articles were grossly overvalued. In one instance the value of an article had been set up in the claim at five times its real value.

The record is voluminous and the evidence is conflicting. It is contended that there is a complete lack of proof of intent insofar as two of the defendants are concerned in that they did not sign the preliminary claim of loss on which the draft was issued and that there was no evidence that they were familiar with the items in it or knew that articles which had not been stolen were included in the list. ■ However, intent may be proven by proof of surrounding circumstances and the inferences drawn from the proven facts. ■ There was evidence of such guilty intent, aside from the admission of the defendant George. The convincing force of the evidence was for the trial court to determine. "After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it." (*People* v. *Lindley*, 26 Cal.2d 780, 791 [161 P.2d 227].) "Obviously, reviewing judges

238

are in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. Undoubtedly, it is for that reason that our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is obviously not a review of a question of fact but purely one of law." (*People* v. *Ohman,* 67 Cal.App.2d 467, 475 [154 P.2d 463].) There is sufficient direct evidence in the record to warrant an inference of intent on the part of all of the defendants to violate the law.

Defendants contend further that they did not violate the statute for the reason that the filing of a proof of loss was waived by the insurance company. It is a fact that the loss was adjusted and the. draft for the payment of the loss was signed on the basis of the inventory and the typewritten statement of the claim which was signed by the defendant Harry E. Ross alone. But the draft was sent to the adjuster to be delivered after the execution of the official form of proof of loss by all of the defendants. Other papers necessary to complete the official form, and already in the possession of the insurer, were to be attached. The execution of a proof of loss as required by the policy of insurance was therefore not waived; on the contrary, it was demanded as a condition for the delivery of the draft in payment of the claim, and though it did not in itself contain a list of the articles claimed to have been lost, it was intended by the insurer and the insured to be a sworn statement of the claim.

The order denying a motion for a new trial is affirmed.

Adams, P. J., and Peek, J., concurred.