[Civ. No. 19070.  Second Dist., Div. One.  Nov. 12, 1952.]

ROSE ORTZMAN, Appellant, v. JOHN VAN DER WAAL
et al., Respondents.

Hahn, Ross & Saunders for Appellant.

Betts, Ely & Loomis for Respondents.

PATROSSO, J. pro tem.—In this action for personal injuries allegedly resulting from a collision between the motor vehicles of the respective parties, plaintiff appeals from a judgment in her favor entered upon a verdict of the jury in the sum of $100.

As grounds for reversal appellant contends (1) that the judgment is not supported by the evidence in that the damages awarded were inadequate and not commensurate with the nature and extent of the injuries sustained by her and (2) that the court erred in giving an instruction hereinafter noted.

The accident in question occurred during the noon hour on June 30, 1950, at the intersection of Figueroa and 23d Streets in the city of Los Angeles. Immediately prior thereto the appellant was driving her Bantam Austin automobile in a southerly direction on Figueroa Street in the traffic lane nearest the center line thereof and had brought her vehicle to a stop at the intersection in response to the red light displayed by the mechanical signal regulating traffic at that point, when she was struck from the rear by the truck of the respondent Allied Steel Products Company and being driven by its employee, respondent Van Der Waal.

Since the jury resolved the question of liability in favor of appellant it is unnecessary to set forth in detail the facts of the accident other than to observe, insofar as the same may be material to a consideration of the questions presented, that appellant testified that as a result of the collision she was thrown forward while her head was thrown backward; her right side struck the steering wheel and the upper portion of her right breast struck the knob on the steering wheel. The testimony of the respondent driver is to the effect that immediately prior to the collision he was traveling behind the appellant at about five miles per hour in low gear, had applied his brakes when within approximately five feet of the appellant's car, and that as a result of the impact the car of appellant was caused to move forward about three feet. Immediately following the accident in response to a question by respondent driver, appellant stated that she was not hurt although upon the trial she testified that she then felt pain. The damage to appellant's automobile was relatively slight, the total cost of repairs being but $37.15.

Appellant did not seek medical advice or attention until some three weeks following the accident at which time she consulted Dr. Schade, who had treated her professionally over a period of approximately four years for various illnesses,

including pain in the breast during the month of October, 1949. On the occasion of her visit to Dr. Schade following the accident appellant complained of pain in her right breast as well as down her right arm. Dr. Schade as a result of the examination then made by him found that there was tenderness along the margin of the muscle that forms the shape of the chest and marked tenderness in the outer half of the breasts. Diathermy treatment was then prescribed and administered until sometime during the month of October when a small, firm mass was felt on the outer aspect of the breast, which upon further examination was determined to be necrosis or dead tissue with inflammation present. The mass was excised on February 23, 1951, and later on April 10, 1951, further surgery was performed which involved the removal of the entire right breast, which latter operation the doctor testified was necessitated by the recurrence of masses in the breast with pain and evidence of inflammation.

Upon the basis of his examination and treatment of the appellant as well as the history given by her, which included the statement that as a result of the accident she struck her breast upon the steering wheel knob, the doctor concluded that the condition necessitating the treatment and surgery was the result of the blow on the breast which she thus sustained, and which resulted in bleeding into the breast tissue with the resultant formation of a hematoma within the substance of the breast which became infected. A substantially similar opinion, based upon the same premise was expressed by Dr. Regan, who performed some of the surgery previously related. Since the removal of the breast several other masses manifested themselves above the outer margin of the main muscle mass of the right chest and immediately below that site causing pain and which condition the doctor testified will require further surgery.

Appellant has an extensive medical history dating from the time she was stricken with polio at the age of sixteen months as a result of which she was and continued to be handicapped in the use of her lower extremities. Prior to her treatment following the accident she had undergone some 30 previous operations mostly orthopedic in character and designed to correct the condition of her legs but including also a hysterectomy in July, 1948, which included the removal of one ovary. It also appears that she had painful or ''shotty'' breasts in July of 1948; suffered from chronic cystic mastitis

(cysts in the breast area) in 1947 and 1948; and had foreign masses or polyps in 1944, some of which were excised in 1948.

The respondents produced no medical testimony, and counsel for appellant strenuously assert that therefore the jury was bound to accept the opinions expressed by appellant's experts as to the causal connection between the accident and the injuries of which she complains, and that as a necessary consequence the jury's award is so palpably inadequate as to re-require a reversal. With this contention we cannot agree.

The jury was not bound to accept the opinions expressed by the medical experts called upon behalf of the appellant and they were properly so instructed. ▇ "Even if several competent experts concur in their opinions, and no opposing opinion is offered, the jury are still bound to decide the issue upon their own judgment assisted by the statements of the experts." (10 Cal.Jur. 972.) ▇ Nor does the presence of expert testimony exclude consideration of other facts which are pertinent to the issue involved. Here the jury in considering the weight to be accorded to the testimony of the experts were entitled to take into consideration not only the reasons given therefor, but the previous medical history of the appellant which we have set forth in some detail; the statement of appellant immediately following the accident that she had not been hurt; and the lapse of time between the alleged injuries and the manifestation of the mass in her breast.

Moreover, as already noted, the opinions expressed by appellant's experts were predicated in part upon her statement to them that as a result of the accident her right breast was caused to strike the knob upon the steering wheel. While, as counsel for appellant assert, no witness testified to the contrary, it by no means follows as they assume that the jury were concluded by her testimony in this respect. While it is sometimes broadly stated that the uncontradicted testimony of a witness to a particular fact may not be disregarded (10 Cal.Jur. 1143), this statement is subject to definite limitations. The true rule in this regard is stated in *Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788], as follows: "The trier of the facts is the exclusive judge of the credibility of the witnesses. (Code Civ. Proc., § 1847.) While this same section declares that a witness is presumed to speak the truth, it also declares that 'This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or his motives, or by contradictory evidence.' ▇ In addition, in passing on credibility, the trier of the

facts is entitled to take into consideration the interest of the witness in the result of the case. (See cases collected 27 Cal. Jur. 180, § 154.) ▮ Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. (*Blank* v. *Coffin, supra* [20 Cal.2d 457 (126 P.2d 868)]; *Hinkle* v. *Southern Pac. Co.*, 12 Cal.2d 691 [87 P.2d 349]; *Barsha* v. *Metro-Goldwyn-Mayer*, 32 Cal.App.2d 556 [90 P.2d 371]; *Burke* v. *Bank of America etc. Assn.*, 34 Cal.App.2d 594 [94 P.2d 58]; *People* v. *La Fleur*, 42 Cal.App.2d 50 [108 P.2d 99]; see cases collected in 27 Cal.Jur. 182, § 156; 8 A.L.R. 796.)''

And in *Market Street Ry. Co.* v. *George,* 116 Cal.App. 572, 576 [3 P.2d 41], it is said: "It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it be credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose, and if they do refuse it credence it is of no more effect than if it had not been given."

Thus in judging the weight to be accorded appellant's testimony in this respect the jury were entitled to consider, not only her interest in the case, but all of the facts surrounding the accident as testified to by her and the other witnesses including, among other things, the force of the blow, her disavowal of any injury at the time, the location of the knob upon the steering wheel as disclosed by a photograph introduced into evidence by the appellant herself, and the manner in which she testified. In the light of their verdict it is but reasonable to conclude that the jury disbelieved the appellant's testimony and determined that she suffered no injury to her breast as a result of the accident as claimed by her. Moreover the trial judge who had the opportunity of seeing and hearing the witnesses, in denying appellant's motion for a new trial, thereby expressed his approval of this implied finding, and hence this court is powerless to disturb the same.

Appellant complains of the following instruction given at the request of respondents: "You are instructed that if you find that there was breast tenderness complained of and suffered by plaintiff prior to the happening of the accident on July 30, 1950, and if you find the resultant condition of her breast may be solely attributed to the pre-existing condi-

tion thus complained of by her, she is in no wise entitled to recover from defendants.''

Inasmuch as appellant sued to recover not only for the personal injuries alleged to have been suffered by her as the result of the accident, but also for resultant damage to her automobile, it is apparent that the instruction is erroneous, for her right to recover for damage to her automobile would in nowise be dependent upon her physical condition antecedent to the accident in question or the extent of the injuries sustained to her person. Inasmuch, however, as the proof of damage to the automobile was limited to the sum of $37.15 and the jury returned a verdict in her favor in the sum of $100, it is apparent that the jury were not misled and that appellant suffered no injury as a result thereof. Indeed counsel for appellant make no complaint of the instruction in this regard but predicate error in the giving of the instruction upon the ground that thereby the jury was told, ''that there was evidence that a pre-existing tenderness of the breast, that is, a condition of tenderness antedating the injury, which was the cause of the breast removal and every other element of damage appellant attributes to the accident.''

Whatever other infirmities inhere in the instruction, it may not be said to be subject to the construction suggested by counsel. The jury could not, in our view, have understood that thereby they were being told, *as a fact*, that the preexisting condition of the appellant's breast was the cause of the condition which she attributed to the blow to her breast which she claims to have sustained as a result of the accident. If we correctly understand appellant's brief, the basis of her complaint would appear to be, in part, that the instruction was unwarranted because respondents called no medical expert to contradict the opinions expressed by appellant's physicians which have previously been adverted to. To this extent at least their contention here would appear to differ in no substantial respect from that previously discussed and disposed of adversely to appellant. As already noted, the opinions of these experts were neither binding upon the jury nor did they operate to remove from the case the factual question as to whether appellant in fact sustained an injury to her breast as a result of the accident.

Further, counsel complain of the use in the instruction of the words ''may be,'' asserting that thereby the jury was permitted ''to speculate and deal in mere possibilities.'' While the instruction in question is by no means a model,

and we refrain from expressing our approval thereof, we do not consider it justly subject to criticism in this respect. When considered in the light of the other instructions, a jury composed of reasonable persons could only understand therefrom that if, after considering all of the evidence, they were unable to determine whether the injuries of which appellant complained were a result of appellant's preexisting physical condition rather than of the accident in question, they should find upon this issue in favor of the respondents. This was but another way of stating what the jury had previously been told with respect to the burden of proof and preponderance of the evidence, namely, that if the evidence upon any issue was evenly balanced in their minds so that they were unable to say that the evidence on either side of the issue preponderated, their finding must be against the party carrying the burden of proof of that issue. For the reasons stated, while not free from criticism, we do not believe that the jury was misled by the instruction or that the giving thereof under the circumstances constituted prejudicial error.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 8, 1952, and appellant's petition for a hearing by the Supreme Court was denied January 9, 1953, and the following opinion was then rendered:

CARTER, J.—In voting for a denial of the petition for hearing in this case I wish to point out that the opinion of the District Court of Appeal is in accord with the views expressed in my dissenting opinions in *Leipert* v. *Honold,* 39 Cal.2d 462, 471 [247 P.2d 324] and *Hamasaki* v. *Flotho,* 39 Cal.2d 602, 613 [248 P.2d 910] but is directly contrary to the opinions of the majority of the Supreme Court in said cases. In the case at bar the District Court of Appeal states: "Moreover, the trial judge who had the opportunity of seeing and hearing the witnesses, in denying appellant's motion for a new trial, thereby expressed his approval of this implied finding, [on appellant's injuries] and hence this court is powerless to disturb the same." In the Leipert and Hamasaki cases, *supra,* the Supreme Court held that in a personal injury case where the award of damages to the plaintiff was less

than the special damages proven and there was a conflict in the evidence on liability, it was an abuse of discretion to grant a new trial on the issue of damages only because such a verdict must be considered a compromise verdict on the issue of liability.

In my dissents in those cases I endeavored to point out, as the appellate court did in the case at bar, that the question of whether or not the verdict was a result of a compromise or because it disbelieved the evidence as to liability or damages or was a result of prejudice against the plaintiff or some other cause was for the trial judge to determine and that his decision on these matters could not be reversed by an appellate court in the absence of a showing of a gross, manifest and unmistakable abuse of discretion.

In my dissent in the Leipert case, *supra*, I stated at pages 483 and 484: "For example, a man with an earning capacity of $300 per month, and a life expectancy of 20 years, who loses a leg in an automobile accident and is thereby incapacitated from pursuing his occupation, is awarded $10,000 by a jury. At the present value of money this would appear to be inadequate. But, would the majority of this court so hold if a trial judge denied a motion for a new trial made by plaintiff on the ground that the award was inadequate? It certainly would not. But, if the trial court would grant such a motion on the issue of damages only, the majority would obviously reverse if there was a conflict in the evidence on the issue of liability. *In other words, the majority would hold the award inadequate as a matter of law in the latter instance, but not so if the motion for a new trial were denied or granted on all issues.* The foregoing results are inescapable under the specious reasoning in the majority opinions in these three cases. The only thing that is made clear by these decisions is that the majority do not approve of a trial court granting a motion for a new trial on the issue of damages only in a case where the damages awarded are inadequate and there is a conflict in the evidence on the issue of liability. In such a case, the majority say, there must be a new trial of all the issues or none at all.

"Of course, if a new trial were granted on the issue of damages only in a case where the trial court was of the opinion that the damages awarded were excessive, the majority would not disturb such an order. They would not do so for the reason that they would fear that proof of the facts establishing liability might result in a larger award of damages to

the detriment of the defendant. (*Fuentes* v. *Tucker*, 31 Cal.2d 1 [187 P.2d 752].)'' (Emphasis added.)

The holding of the majority in denying appellant's petition for a hearing in the case at bar today demonstrates the unimpeachable truth of the above-quoted statement.

It seems to me that if, as the majority held in the Leipert and Hamasaki cases, *supra*, a trial court was guilty of an abuse of discretion in granting a motion for a new trial on the issue of damages only in a case where there is a conflict in the evidence on liability and the award of damages is less than the amount of special damages proven, the rule should be the same where the trial judge denies a motion for a new trial in such a case. It cannot be denied that the verdict in the instant case was a result of compromise. Plaintiff was either entitled to more than $62.85 or no sum whatever for her personal injuries. Under the holding of the majority of the Supreme Court in the Leipert and Hamasaki cases, *supra*, this compromise must have been the result of doubtful liability and therefore it was an abuse of discretion for the trial court to do anything other than grant a motion for a new trial on all issues. If the trial court had granted plaintiff's motion for a new trial on the issue of damages only, this court would obviously have reversed such order and directed a new trial on all issues as it did in *Hamasaki* v. *Flotho, supra*. If the position of the majority is sound, why should the rule be different where the trial court denies a motion for a new trial in a case such as this where the verdict is obviously the result of a compromise?