[Civ. No. 22429.   Second Dist., Div. Three.   Apr. 28, 1958.]

## FLORENCE LOWE BARNES, Appellant, v. HORACE M. DOBBINS, Respondent.

*Assigned by Chairman of Judicial Council.

Beardsley, Hufstedler & Kemble, Charles E. Beardsley and Shirley M. Hufstedler for Appellant.

Ekdale & Shallenberger for Respondent.

NOURSE, J. pro tem.*—Plaintiff appeals from an adverse judgment in an action brought by her to recover damages from the defendant because of alleged fraud practiced upon her.

The sole ground upon which appellant seeks to reverse the judgment of the trial court is the insufficiency of the evidence to support the findings of fact made by that court.

It would serve no useful purpose to here recite all of the conflicting evidence upon which the trial court based its findings of fact and judgment. The following facts which were proven by substantial evidence, show the basis for the controversy between the parties.

Plaintiff is one of the beneficiaries under a testamentary trust created by her grandfather in Pennsylvania. Defendant was a successor trustee of that trust and in 1942 and thereafter, was the sole trustee. In 1942, pursuant to an order made by the Orphans' Court of Montgomery County, Pennsylvania, the trust was terminated and the defendant was ordered to distribute to the beneficiaries their respective interests in the corpus of the trust. Pursuant to that order, defendant did, in 1942, distribute to the beneficiaries their respective interests in the trust property with the exception of certain parcels of real property of small value which are not involved in the present litigation.

Among the assets distributed, was certain improved real property in the city of Philadelphia, hereinafter called "Broadwood" property, and all of the stock of a corporation known as the Lanbar Hotel Company, hereinafter designated as "Lanbar." At that time, there was distributed to plaintiff an undivided one-fourth interest in the Broadwood property and two and a half shares of Lanbar (this constituted one-fourth of the issued and outstanding shares of that corporation).

The Broadwood property was acquired by the testamentary trustee through foreclosure proceedings in 1932. This property was improved with a building designed for use as a club, but which, after its acquisition by the trust, was operated as a hotel. After the acquisition of the Broadwood property, Lanbar was organized for the purpose of operating the property as a hotel and all its stock was issued in the name of the defendant. Upon the organization of Lanbar, the trustee executed a lease of Broadwood property to Lanbar. The record here does not show what term the lease covered, or what covenants or conditions were contained therein, but it is

---

*Assigned by Chairman of Judicial Council.

to be inferred that it reserved an annual net rent of $30,000. During the existence of the trust, the defendant as trustee and president of Lanbar, managed the property. After the distribution of the Broadwood property and the Lanbar stock, the defendant by agreement with the owners of the undivided interest, continued to manage the hotel as the agent of the beneficiaries and remained as president of Lanbar. He was acting in both these capacities at the time he entered into the contract with the plaintiff, which is the basis of this action.

Shortly after plaintiff became the owner of her undivided interest in the Broadwood property and the Lanbar stock, she instituted negotiations for the sale to defendant of her interests in these assets and continuously thereafter and until January, 1945, when she entered into a contract of exchange with defendant, she sought by negotiation, cajolery and threats to induce defendant to enter into a contract with her. During these negotiations she sought and obtained the advice of independent counsel, and received semiannually profit and loss statements and balance sheets of the hotel and Lanbar. Throughout her attempts to have defendant acquire her interest in the properties, she expressed distrust of the defendant and her belief that he was attempting to take advantage of her through offering her in exchange for the Pennsylvania property, among other things, real property in California upon which, she alleged, he had placed an inflated valuation. Among the properties as to which plaintiff asserted defendant had placed an inflated value, were a number of lots in a subdivision in Los Angeles county known as Rodela del Sol. During the period above mentioned, plaintiff also attempted to negotiate a sale of the entire Broadwood property and the Lanbar stock to third persons, and at one time secured from defendant an option to purchase an interest which he held in trust for his children in those properties, which interest was equal to her own, at a price of $200,000.

Late in 1944, plaintiff went to Philadelphia where she resided in the Broadwood Hotel. During her stay there, she was suffering from an infection and underwent treatment therefor. During her stay in Philadelphia she resumed negotiations with defendant for the acquisition by defendant of her interest in the Broadwood property and her stock in Lanbar. As a result of these negotiations, the parties executed a contract under date of January 3, 1945, whereby plaintiff agreed to convey and transfer the Broadwood property and her two and a half shares of Lanbar to defendant, and de-

fendant agreed to transfer and convey to plaintiff certain real property in California, including the Rodela del Sol lots above mentioned, and certain securities, and to execute in favor of plaintiff certain promissory notes. The terms of the agreement were thereafter fully carried out by each party.

Plaintiff commenced the present action in October of 1951. By her amended complaint filed July 6, 1956, she alleged: that at the time of the execution of the agreement the defendant was her uncle and also was acting as trustee for her, and that she reposed complete confidence in the defendant because of said relationship. That defendant represented to her that the market value of the Rodela del Sol property was $105,600, whereas it had a value of not more than $10,000; that the defendant represented to her that her shares of Lanbar were valueless and that the corporation had no cash assets, while in truth and in fact, it had cash on hand in a sum not less than $30,000; that said representations were known by the defendant to be false and were made by him for the purpose of misleading and deceiving the plaintiff and inducing her to enter into the agreement in question. It further alleged that the actual value of the property with which plaintiff parted through the exchange, was not less than the sum of $250,000, and that the actual value of all of the property she received, was not more than $160,000, and that she was therefore damaged in the sum of $90,000.

While the allegations of the amended complaint are sufficient to state a cause of action on the ground of either actual or constructive fraud, and in the trial court the plaintiff stressed her right to recover because of actual fraud, she, on this appeal, only asserts her right to recover under the evidence, on the grounds of constructive fraud. We are therefore, not concerned with the sufficiency of the evidence to support the trial court's findings that defendant did not intend to defraud or mislead the plaintiff.

The trial court found adversely to the plaintiff on all the ultimate facts pleaded in the complaint, and found affirmatively that plaintiff did not repose complete, or any confidence in the defendant; that she did not believe or rely upon any representations made by the defendant, but that on the contrary, plaintiff relied upon investigations of her own made with the advice and assistance of independent legal counsel; that the defendant did not misrepresent any fact to the plaintiff, or conceal any fact from the plaintiff. The court further found affirmatively that the agreement was fair and equitable;

742

that the properties received by the plaintiff were substantially of "equivalent value" to the property transferred by her, and that plaintiff therefore sustained no damage.

A careful study of the entire record here, convinces us that, while as to many of the issues the evidence was conflicting, there was substantial evidence to support each of the findings that are attacked.

While in her brief, the plaintiff attacks each of the findings of the trial court that are adverse to her, we will not here follow her argument as to each finding, but confine ourselves to her attack on two findings; for if either of these findings is supported by the evidence, the judgment of the trial court must be affirmed.

As we have pointed out, plaintiff now rests her case upon the grounds of a constructive fraud and does not attack the findings of the trial court which negative scienter. The entire basis for plaintiff's assertion that she is entitled to recover on the ground of a constructive fraud, is that a confidential relationship existed between her and the defendant, and that she entered into that contract with the defendant by reason of "the confidence reposed in the defendant because of such relationship." The trial court found, and the evidence clearly established, that at the time of the transaction in question, the defendant was acting as the agent of the plaintiff in the management of the Broadwood property and was president of the Lanbar. Standing alone, these facts would establish that defendant occupied a fiduciary relationship towards the plaintiff, and from that fact alone, it would be presumed that if he gained an advantage over her, that he gained it through the influence of the relationship. (Civ. Code, § 2235.) Whether the plaintiff did repose trust and confidence in the defendant and was influenced to enter into the contract because of the relationship between them, was a question of fact (*Buchmayer* v. *Buchmayer*, 68 Cal.App.2d 462, 471 [157 P.2d 9]; *Sime* v. *Malouf*, 95 Cal.App.2d 82, 99 [212 P.2d 946, 213 P.2d 788]) and the court expressly found that the plaintiff did not repose any trust or confidence in the defendant, and did not act in entering into the agreement because of any such trust or confidence, but to the contrary, relied upon her own investigation made with the advice and assistance of independent counsel.

It is clear that there was substantial evidence to support these findings. Plaintiff had not only repeatedly expressed to the defendant her distrust of him, but had engaged in litiga-

tion charging him with breach of trust; she had received semi-annual accountings as to the operation of the hotel, and during the period that she was receiving these, and as a part of her attempts to induce defendant to acquire her interests in the Pennsylvania property, had secured independent legal advice and had repeatedly advised the defendant that if he did not acquire her interests or advance her monies on the security of them, that she would send the attorneys whom she had employed, to Pennsylvania to take action, although what action they would take is not clear. These facts amply support the findings of the trial court that there was no undue influence, that there was no breach of any confidential relationship by the defendant, and that the contract was not the result of any confidence reposed by the plaintiff in the defendant.

These findings destroy any basis for recovery on the grounds of constructive fraud and as the finding of the lack of scienter, that is intent on the part of the defendant to deceive, is not attacked, it becomes immaterial as to whether the findings that there were no misrepresentations and no concealments are supported by the evidence and plaintiff's attack on the judgment must fail, for without scienter, there could be no recovery based upon actual fraud. (*Wishnick* v. *Frye,* 111 Cal.App.2d 926 at 931 [245 P.2d 532].)

Assuming *arguendo* a basis for recovery on constructive fraud, the judgment appealed from must be affirmed unless the finding of the trial court that plaintiff sustained no damage is unsupported by the evidence. (*Kisling* v. *Shaw,* 33 Cal. 425 at 446 [91 Am.Dec. 644].)

If this were an action by which plaintiff sought to rescind her contract and to disaffirm it, she might establish her case by proof of the confidential relationship and proof that the defendant gained some advantage, or that she suffered some detriment under the contract. (Civ. Code, § 2235; *Bradner* v. *Vasques,* 43 Cal.2d 147 [272 P.2d 11].) In the present case, however, plaintiff does not seek to disaffirm her contract, but affirms it, and seeks to recover damages, and the burden of proof was on her to establish the amount of those damages.

As we have pointed out, the trial court found that the property she transferred and the property she received, were substantially of equivalent value, and that she sustained no damage by reason of the exchange. That the evidence is sufficient to establish a value of $197,700 for the properties received by the plaintiff in the exchange, is admitted by her. It is her contention, however, that the evidence compelled a

finding that the properties which she transferred to the defendant had a value of not less than $256,352, and that she was therefore entitled to a judgment in the sum of $58,652.

The complaint did not allege separate values as to the Broadwood property and the shares of Lanbar, but alleged that combined, they had a value of not less than $250,000. The trial court did not make specific findings as to the value of these properties, or as to the value of the properties received by the plaintiff, but did find that the two sets of property were of "substantially equivalent value." Plaintiff bases her contention that this finding is unsupported by the evidence, upon the claim that the evidence shows without conflict that the Lanbar stock had a value of $6,352 and the Broadwood property a value of $250,000.

Plaintiff contends that the Lanbar stock had the value above stated as a matter of law. She bases this contention on the fact that the evidence, as interpreted by her, shows that Lanbar, as of the end of 1944, had cash on hand in the sum of $25,408; that that amount was its net worth, and that therefore, appellant's stock in that corporation was worth one-quarter of that amount.

It is true that under some circumstances, stock in a closed corporation is to be valued at its proportionate share of the net worth of the corporation (*County Nat. Bank etc. Co.* v. *Sheppard,* 136 Cal.App.2d 205 [288 P.2d 880]) but that rule does not apply in all cases. (13 Fletcher Cyclopedia Corporations, § 5899.)

In the present case there was substantial evidence that Lanbar was but a vehicle used by the owners of the hotel property to operate it; that the cash it had on hand was necessary operating capital for the hotel property, not subject to distribution among the stockholders, and that its net earnings for the year 1944 were less than $3,800. The evidence further showed that the only asset of Lanbar, other than its operating capital, was the lease on the hotel property and no evidence was offered as to the date upon which that lease would expire.

Under this evidence, the court was not, as a matter of law, bound to fix the value of plaintiff's stock in accordance with the arbitrary rule laid down in *County Nat. Bank etc. Co.* v. *Sheppard, supra.*

Assuming, however, that the plaintiff's stock in Lanbar had the value assigned to it by plaintiff, still, the court's finding that the property with which plaintiff parted was not greater than the value of the property which she received,

must be sustained unless the evidence compelled a finding that the value of the hotel property substantially exceeded $191,000, for unless the value of all she gave did not exceed $197,700, she sustained no damage.

Plaintiff bases her contention that the plaintiff's interest in the Broadwood property had a value of $250,000, upon the testimony of the witness Vaughan, who expressed the opinion that the entire property had a value of $1,000,000 and contends that there was no competent evidence contrary to his testimony. The trial court was not, however, bound by the testimony of the expert (*Ortzman* v. *Van Der Waal*, 114 Cal. App.2d 167 at 170 [249 P.2d 846, 252 P.2d 7]; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751 at 766 [128 P.2d 665]; *Helbing* v. *Helbing*, 89 Cal.App.2d 224 at 228 [200 P.2d 560]), but was entitled to examine the reasons given by the witness to support his opinion and the facts affecting value shown by the evidence.

Witness Vaughan had made no personal examination of the said property; he had no knowledge of any sales of any comparable property; his opinion was arrived at by applying to the gross income of the Broadwood property for the year 1944, a theoretical ratio of net profit to gross income, which he derived from a publication purporting to give the mean percentage of net profit earned by the 239 hotels reported on, and then capitalizing that net income at 10 per cent.

In determining what weight, if any, to give to the opinion of witness Vaughan, the trial court was entitled to take into consideration the fact that he had never seen the subject property; the fact that he knew nothing as to sales of any comparable property; that the hotel building was not designed for a hotel and was not economically suited for operation as a hotel; that the property was on the edge of a slum district of Philadelphia and away from the district where the first-class hotels of that city are situated, the actual net income of the operation of this particular property, and the rent reserved under its lease. (*Proctor* v. *Arakelian* (1929), 208 Cal. 82, 87 [280 P. 368].) The trial court might well have adopted the valuation method (used by Vaughan) of capitalizing net profit but using the actual net profit from the operation of the hotel rather than an assumed one. If it did, it would have arrived at a value for the Broadwood property very substantially less than $900,000. The profit and loss statement for the year 1944 (Exhibit 25) discloses a net profit of the hotel, as a separate entity from Lanbar, of $30,775.28.

Capitalizing this income at 10 per cent would give a value to the hotel of $307,752, or a value of plaintiff's one-fourth interest of less than $77,000. If however, we treat the hotel and Lanbar as a unit, its combined net profit amounted to $40,775, which capitalized at 10 per cent gives a value for the entire property of approximately $407,000, and for plaintiff's interest $101,750. Further, it is a matter of common knowledge, which the court was entitled to take into consideration, that an undivided interest in real property seldom has a market value equal to its proportionate part of the value of the whole.

It is evident that the trial court was fully justified in finding that the plaintiff had failed to sustain the burden of proof that she had suffered damage in any amount.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.